Thank you. May it please the Court, my name is Hans Johnson, and I represent Linda Sheehan Anderson and her daughter, M.A. The question presented in this case is whether eight-year-old M.A., insured under her father's automobile policy, may be excluded from coverage under the underinsured motorist and personal injury protection portions of the policy on the basis that eight-year-old M.A. had her mother's car available for her regular use. By way of background, M.A.'s parents, Edward and Linda Anderson, are divorced. They maintain separate households. M.A. is a resident of both. And her mother regularly, on the custody arrangement, regularly drove her and her car. Her mother regularly drove M.A. Her father regularly drove M.A. M.A. maintained a residence at both households. In 2005, M.A. was a passenger in her mother's car. Her mother's car was hit by an underinsured motorist. M.A. suffered a very profound and disabling brain injury. It's an extremely unfortunate accident, of course, in certain circumstances. But the regular use exclusion, the Washington courts say, is clear. It's unambiguous. Its purpose is – I mean, it's written in language that is consistent with the Washington statute, and it's consistent with the articulated purpose of a regular use exclusion. The regular use exclusion has been held valid in the state of Washington, but in each instance where its validity has been upheld, it dealt with an individual who was either an owner, an operator, or a driver of the vehicle in question. To the extent a child passenger is involved, this is a case of first impression within this circuit. Well, I don't believe that the individual was any of those things in Sears. Your Honor, you're absolutely correct. Well. In Sears, the person was a passenger. In Sears, the court held, looking at the case based upon an inclusion analysis, do we want to include this person under underinsured motorist coverage, given the public policy in the state of Washington to include victims of automobile accident in coverage where possible? The Sears court simply held that a passenger is using a vehicle for the purpose of coverage under underinsured motorist prevention. Okay. And Buttsberger? Buttsberger the same. Buttsberger was not even a passenger. Buttsberger was assisting somebody who'd been in an automobile accident. Right. And the court said for the purposes of inclusion, again, focusing on the policy, we are going to allow coverage because Buttsberger was sufficiently connected with the vehicle where the injured person was being treated such that he was afforded coverage. And is there any Washington authority that would allow for interpreting the word regular or the concept regular use of the word use differently in the same policy? Most certainly. If you go. In what case? If you go to Couch, Your Honor, he indicates. Is he a Washington, a Washington state insurance president? He is not. Okay. I'm sorry for not directly answering your question. If you go to North Pacific Insurance Company versus Christensen, if you go to Viking versus Zincograph, truck insurance, you all have situations where the court has held that the term use requires some element of control over the vehicle. Again, we have. We should not apply the Buttsberger control factors. Rather, we should. The Buttsberger control factors are used for the purposes of inclusion within the UIM policy, not for the purposes of exclusion based upon the regular use exclusion. And to the extent that there is an issue here, certainly in the case of Wheeler versus Rocky Mountain Fire and Casualty, the term use is most certainly susceptible to two different interpretations. And given that, Washington courts have held when that occurs, the term is ambiguous. Even though Hall itself, you're saying that's an inclusion case. Hall says regular use is an accepted term and concept in Washington insurance law, and it's ambiguous. Hall does say, and again, Hall does say that the regular use exclusion and use in that exclusion is not ambiguous. But I believe if you're going to test an ambiguity, you can't take it out of context. In that case, again, you're dealing with the driver. I believe the Hall case dealt with the school bus driver who had control over the vehicle. And having control over the vehicle, the regular use exclusion applied, and the court found, again, that there was no ambiguity. It was clear. But when you are dealing with a child passenger who has no control over the vehicle, certainly I believe a different definition of use would apply if you are trying to exclude coverage. And I would suggest to the Court that here's what Hall says. It's talking about the purpose of regular use policy. He said regular use provisions such as the one in Hall's policy are meant to provide coverage for isolated use of a vehicle without requiring the insured to pay an additional insurance premium to insure that vehicle. Yes. So this isn't an isolated use. There's a regular use, albeit she obviously is too young to drive as a child, but it's a regular use of her mother's car. Is that correct? Again, we're going back to how do you define use. Well, I understand that. I understand that. But regular is certainly regular. So now what you want us to say is that we would have to draw two distinctions. One is we have to adopt, which I understand, there's an inclusion versus exclusion dichotomy in how one reads clauses, and that we'd also have to say use in the context of a child has not been defined by the Washington courts, but it's implicit in all these other cases or the few cases that you cite that it has to be some ability to actively use the car. Even though a guest passenger may be, I assume, totally incapable, an adult guest passenger is totally incapable of driving a car, someone who is blind, someone who is disabled, someone who doesn't even have a driver's license. Where's the principle that you're asking us to import into Washington law here? I'm asking you to import into Washington law the principle that if you want to exclude somebody for using a vehicle, that use has got to have some control over the vehicle. Even if it's a person who's an adult who has no control over it. They should not be excluded. They are not using the vehicle. Well, the purpose of the exclusion is to allow the use of a vehicle. If you read the entire exclusion, it only excludes people to the extent that they have regular use of the vehicle, and it is not listed for liability under the policy. A blind person, a child, somebody who is sitting as a passenger, what purpose would be served to require those individuals to insure the car for liability? They can never create liability. So going back to your question, I believe use, again, cannot be assumed. Use has got to mean control over the vehicle. If you adopt the position that these child passengers, even adult passengers, are using a vehicle for the purposes of the regular use exclusion, they would be excluded from coverage under underinsured motorist or PIP benefits any time they were driving or riding in a bus, a van, a carpool, or anything of that nature, to the extent those regular uses were not included under the liability portion of the policy. I notice I have about 30 seconds left, and I would like to reserve that for rebuttal. Certainly. Thank you. Thank you, Mr. Johnson. Mr. Hampton. Warning. May it please the Court. My name is Joseph Hampton. I represent State Farm in this matter. It is indeed a tragic circumstance, but what we have to remember here is that tragedy does not drive jurisprudence. Reason and analysis do. We ask this Court to affirm Judge Martinez's ruling. The Court has already spoken at length with Mr. Johnson about some of the factual matters here, so I'm not going to get into that. There are really ‑‑ about the purpose of a regular use exclusion in the context of either a disabled adult or a child who doesn't really have any control using those two as examples, and his argument that that would defeat the whole purpose of having an uninsured motorist. It doesn't because the regular use exclusion deals with multiple cars in one household or available to a resident of a household. And the whole idea is if you have a couple of cars in the household, and one is insured and the other is not, it makes sense that when the noninsured car is being used by anybody, then those people don't get the coverage they purchased on the insured car. And that's what the regular use exclusion is all about. It's statutorily authorized. It's unambiguous. It's enforced repeatedly by Washington law. Now, as I said earlier, this is a tragic circumstance because we have a child who has no control over the vehicle or where she's going or what car she's riding in. But the case law does not make any distinction about that. A lot of the cases that apply and enforce the exclusion have similar circumstances. The patrolman, the deputy sheriff, doesn't always have control over what patrol car he uses. And the school bus driver doesn't have control over which school bus she drives on a daily basis. Still, those vehicles are regularly available for that person's regular use, and so the exclusion applies. The control issue really doesn't have anything to do with UIM or PIP. And the control concept actually comes from a line of liability cases, liability insurance cases, and the courts there were talking about whether liability coverage is extended to someone who doesn't have control of the vehicle. That's not what we're talking about here. We're talking about a statutorily mandated coverage that is essentially defined and outlined by statute and by regulation, and it says it makes no distinction over whether the person is in control of the vehicle or not. It's just plain user. It's a broad-based coverage. And because we define use so broadly for inclusion, it makes sense that we incorporate that into the exclusion as well. Well, I'm not sure about that, because traditionally insurance policies are construed in favor of the insured when you're talking about an exclusion. Right, Your Honor, and they are done so when there is an ambiguity. But here we already know, number one. Well, I don't know if Hall addresses the concept. It says that Hall wasn't addressing the concept of use in the context of someone who couldn't in the normal sense of the word use it in terms of being able to control it. It was a passive passenger that counsel has introduced. So I grant that Hall says what it says. I'm not saying anything contrary to that, but he's raised an interesting question as to whether under the purposes of the policy exclusion, whether it fits in the kind of circumstances we're addressing here. And that's why I asked you to address it. It sure does. It fits perfectly, Your Honor. She's a resident of two households, and so she's already received coverage under the mother's car policy. It's just that she has not ‑‑ she is not eligible for coverage under the father's policy. Now, the passive use issue was actually ‑‑ Let me ask you this. Under the father's policy, just so I understand, under the father's policy, if she had one day just on a field trip been taken by the school and all of the schools she went to, and the bus had gotten into a crash and she suffered these injuries, would his policy then have covered her in that circumstance because it was an incidental use? Yes, because the test is frequent and predictable. That's what creates regularity. One‑time use of a vehicle is isolated, and that's what the case law says. It's just the idea is that you can't get more than ‑‑ you can't get double the coverage for one premium, and that's what the case law comes back to. Now, the Sears case that was touched on at Mr. Johnson's turn actually deals with the passive use issue, and it says that passive use by a passenger is still use. Judge Reimer talked about Butzberger and Sears, and it's true. Use is broadly defined in Washington, and you have to take that into consideration when you're plugging that meaning into either the grant of coverage or the exclusion. No, I don't think anyone can seriously argue that a passenger is not using a car in which she rides. So I'd like to touch on three things briefly. Again, this is an exclusion that is permitted by statute. In fact, most of these exclusions, whichever carrier writes them into their policies, take the language straight out of the statute and plug it into the policy. That is essentially engrafting public policy into the policy itself. And so these exclusions do not violate public policy. Secondly, repeatedly the courts of Washington have said these exclusions are not ambiguous, and so the only real question is whether it applies here. We're not dealing with construction, interpretation. We're just dealing with application. And Judge Martinez correctly applied this exclusion to these facts, as we've already discussed. One more thing. There was a claim for extra contractual damages as well in this case. Extra contractual damages is kind of an umbrella term we use to denote bad faith, consumer protection act negligence, something like that. The one thing that's absolutely certain here is that this is not a bad faith case, and the reason is this. No carrier can be extra contractually liable when it has made a reasonable decision, even if that coverage decision is incorrect. In order for my client to be extra contractually liable to MA, then not only my client would have to be incorrect and in the common parlance out to lunch, but not only that, Judge Martinez would have to be incorrect and out to lunch. Neither of those is present here. We're asking this Court to affirm, and there are many reasons for it to affirm. We ask the Court to do so. Thank you. Thank you, Mr. Hampton. Mr. Johnson. I would like to briefly, if I might, touch on your question, Judge Fischer, about the bus accident. Mr. Hampton indicated that there would be coverage because that was an isolated event. If the same circumstances had occurred on a regular bus route that took this child to school, the answer that Mr. Hampton would have given you would have been there would be no coverage. The school bus, though, under the law of Washington, would have had an underinsured motorist endorsement or provision in the policy in any event. I don't believe school buses do have underinsured motorist endorsements in Washington, Your Honor. I could be incorrect, but that's my belief. I thought the statute says that a motor vehicle, if it's going to be registered in the State of Washington, assuming it's going to be registered in the State of Washington, I thought they had to have. Unless specifically rejected by the owner or operator of the vehicle. And again. I don't want to spend much time on this, but it's your position that in the State of Washington, a school bus registered in this State, obviously, would not be required to have an underinsured motorist provision in the policy? That is my position. All right. So if a school bus was hit by a drunk driver and the youngster was regularly on that bus, took her or him to and from school every day, under that circumstance, your position would be that the statutory scheme or its purpose would somehow be perverted because the guardian of the child could not recover under the uninsured motorist endorsement of, for instance, in this case, Mrs. Anderson or Mr. Anderson? That is correct. Is there any ñ I just wanted to ask, is there any ñ apparently on this idea of exclusion, in other words, I don't think there's ñ there doesn't seem to be any question that an occupant of a vehicle can be using the vehicle. That's considered use of the vehicle. But your argument, as I understand it, is that the case law that we have includes situation where that person is injured and you're talking about coverage. You're not talking about exclusion. Are there any ñ and that's apparently an issue which hasn't been addressed in a reported decision in the State of Washington? It has not been addressed in a reported decision in the State of Washington. How about elsewhere that you're aware of? Any other states? I can represent to you that I believe I have done a thorough search and I have never seen a case decided where a child passenger has been excluded on the basis of the regular use exclusion. What's the difference, though, if it's a child passenger or an adult passenger? It's ñ Assume the adult passenger is not using the vehicle in the sense of driving it or controlling it, for whatever reason. They would be treated the same under the State foreign policy to the extent that their regular use was regular in a non-owned, non-policy listed vehicle. Yes. For example, in a car pool, a van pool, any type of rideshare arrangement. To the extent of any regularity, they would be excluded under State farms' interpretation of the regular use exclusion. So we shouldn't attach any particular significance to M.A. being a youngster as distinct from the fact she didn't have control, as other passengers may not have control. So the age of the child is not pivotal here. Well, no. She's a mother. The age of the child probably is not relevant in that respect because children and adults would be excluded. The only issue I guess that I would draw or the distinction is that adults have the opportunity of driving or riding. Children are always passengers in somebody's car. Well, they have the capacity to do it. But in our hypothetical, we're assuming that the passenger in the vehicle is an adult and is not exercising any control over the vehicle whatsoever. They would be excluded under the State foreign policy. Okay. Thank you, Mr. Johnson. Counsel, the matter just argued will be submitted and will next hear argument in Gonzales, the city of Federal Way.
judges: Rymer, Fisher, Hurley